# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
(Filed: August 27, 2019)

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| LISA BARKER, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 16-1554V |
| | * | |
| v. | * | Chief Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Reasonable |
| AND HUMAN SERVICES, | * | Basis; Percentage Reduction in Fees; |
| | * | Expert Costs. |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

Renee J. Gentry, Vaccine Injury Clinic, George Washington University Law School,
    Washington, DC, for petitioner.
Althea W. Davis, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On November 21, 2016, Lisa Baker ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] On March 8, 2017, petitioner filed an amended petition alleging that she developed cutaneous T cell lymphoma ("CTCL") as a result of the hepatitis A/hepatitis B ("hep A/hep B") and shingles vaccines she received on December 30, 2014. Amended Petition (ECF No. 15) at ¶ 12. On May 11, 2018, the undersigned issued a decision dismissing petitioner's claim for insufficient proof. Decision dated May 11, 2018 (ECF No. 36).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

On October 23, 2018, petitioner filed a motion for attorneys' fees and costs. Petitioner requested attorneys' fees of $18,920.60 and attorneys' costs of $13,475.00, for a total request of $32,395.60. Pet. Motion dated Oct. 23, 2018 (ECF No. 40) at 1. Respondent filed a response on February 28, 2019, opposing the motion on the grounds that the claim lacked reasonable basis. Resp. Response dated Feb. 28, 2019 (ECF No. 47). Emphasizing the inadequacies in petitioner's expert reports, respondent asserted that "there was no evidentiary support for petitioner's claim that her hep A/hep B vaccine caused her to suffer guttate psoriasis or CTCL." Id. at 10. In her reply, petitioner contended that respondent had "conflate[d] Petitioner's separate burdens of reasonable basis and sufficiency of the evidence to prevail on causation." Pet. Reply dated May 29, 2019 (ECF No. 52) at 4. She maintained that "the level of proof required to demonstrate reasonable basis is substantially lower than the evidence required to prove causation." Id. at 4-5 (emphasis in original). Petitioner further emphasized that once it became clear that she would not prevail on her claim, she voluntarily "sought not to waste the Court's time and resources by unnecessarily pursuing a claim that she could not prove by a preponderance of the evidence." Id.

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned GRANTS petitioner's motion in part and awards $21,450.78 in attorneys' fees and costs.

I.     **Facts**

On December 30, 2014, at fifty years of age, petitioner received hep A/hep B and shingles[3] vaccinations. Pet. Ex. 1 at 1, 10. Prior to this vaccination, petitioner's medical records displayed a history of skin conditions such as rash, skin lesions, skin tags, and other skin growths, and she reported a family history of skin cancer. See id. at 133, 219; Pet. Ex. 6 at 27, 31, 33. She had also experienced chronic hip and knee pain, lower back pain, and tailbone pain. Pet. Ex. 1 at 86-89.

After her vaccination, petitioner was next seen for a full skin exam on February 10, 2015. Pet. Ex. 6 at 23-24. Her examination revealed hyperpigmented macular patches on her face, as well as a brown scaly rash on her chest, shoulder, back, and upper extremities. Id. at 23. Additionally, petitioner reported a history of broken vessels on her upper back; varicose veins in her lower legs; reddish patches on her lower legs for three months; and a rash on her chest and neck, treated in the past with steroids. Id. She was diagnosed at this time with lentigines, seborrheic keratosis, hemangiomas, and contact dermatitis. Id. at 24.

Petitioner visited her primary care physician on March 3, 2015, complaining of painful varicose veins, a blood vessel in her cornea, and multiple pre-cancerous skin lesions. Pet. Ex. 1 at 71. The records from this visit contain no mention of any kind of rash. Id. at 71-74. On March 27, 2015, petitioner presented to the Ellison Vein Institute with scarring from a prior sclerotherapy treatment of her varicose veins. Pet. Ex. 10 at 4-6. Bilateral lower extremity venous sonography revealed mild right focal greater saphenous vein reflux, and treatment options were discussed. Id. at 5-6.

---

[3] The shingles vaccine administered to petitioner is not covered by the Vaccine Injury Compensation Program. See 42 C.F.R. § 100.3. Therefore, only the combined hep A/hep B vaccination is at issue here.

On August 18, 2015, petitioner was seen by Dr. Josep Genebriera, her dermatologist. Pet. Ex. 6 at 21. She reported a three-month history of red bumps all over her body, primarily on her back and legs, and she noted that the bumps were not itchy. Id. Dr. Genebriera diagnosed her with possible nummular eczema or guttate psoriasis. Id. at 22. During a follow-up appointment for her guttate psoriasis on September 22, 2015, petitioner discussed treatment options with Dr. Genebriera and was given a starter pack of Otezla. Id. at 17-18. On December 8, 2015, at an additional follow-up appointment, petitioner reported "possible reaction to [Humira] injection (rash) within days of injection." Id. at 14. She also noted that she was "clear with no flares" and "thinks she got psoriasis from strep." Id.

Petitioner next sought treatment for her psoriasis on March 1, 2016. Pet. Ex. 6 at 12. Although she was taking Humira, her psoriasis has spread to her legs, trunk, and arms. Id. Possible rosacea on her face was also noted. Id. On March 29, 2016, petitioner underwent a right and left mid-paraspinal biopsy, which suggested a differential diagnosis of dermatitis, guttate psoriasis, photodermatitis, or connective tissue disease. Id. at 57. She was treated with Stelara. Id. at 7, 10.

On May 26, 2016, petitioner visited Dr. Kendall Adkisson with a chief complaint of psoriasis on her trunk and leg, which she stated had been present for one year and four months. Pet. Ex. 7 at 5. The rash consisted of "diffuse scattered pink to erythematous scaly patches and plaques distributed on the trunk, legs, and arms, chest." Id. It was further described as "bleeding, itchy, and red and . . . mild in severity." Id. Additional lab tests were ordered. Id. Petitioner returned for a biopsy on June 28, 2016, the results of which were consistent with early primary T cell lymphoma (CD4+ mycosis fungoides type). Id. at 8, 10. During a follow-up appointment on July 12, 2016, Dr. Adkisson explained the biopsy result and indicated that psoriasis now seemed "much less likely." Id. at 10.

On July 25, 2016, petitioner saw Dr. Sejal Kuthiala, an oncologist, for a consultation. Pet. Ex. 9 at 9. Petitioner reported that she had noticed a rash on her lower extremities about a year and a half ago, and she also complained of swelling around her neck. Id. Given petitioner's history, Dr. Kuthiala's impression was probable cutaneous T cell lymphoma, and he ordered a number of tests. Id. at 10. During a follow-up appointment on August 9, 2016, Dr. Kuthiala reported that based on the test results, petitioner's disease was "skin localized." Id. at 4. He recommended local skin therapy, which was performed by Dr. Adkisson. Id.

Petitioner has not submitted updated medical records since 2016, and so her current status is unknown.

## II. Discussion

### A. Reasonable Basis

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought." Id. Here,

respondent does not challenge petitioner's good faith. Resp. Response at 8. Rather, respondent asserts that petitioner's claim had no objectively reasonable evidentiary basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014). Instead, it has been described simply as "an objective inquiry unrelated to counsel's conduct." Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 636 (Fed. Cir. 2017). While incomplete medical records do not prohibit a finding of reasonable basis, Chuisano, 116 Fed. Cl. at 288, the Vaccine Act contemplates "a simple review of available medical records to satisfy the attorneys that the claim is feasible" prior to filing. Silva, 108 Fed. Cl. at 405.

Here, the undersigned determines that petitioner had sufficient reasonable basis to file the claim. "[I]n a field bereft of complete and direct proof of how vaccines affect the human body," petitioners will inevitably be compelled to explore novel theories "hitherto unproven in medicine." See Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274 (Fed. Cir. 2005); see also Browning v. Sec'y of Health & Human Servs., No. 02-929V, 2010 U.S. Claims LEXIS 761, at *3 (Fed. Cl. Spec. Mstr. Sept. 27, 2010) (contemplating "the extent to which a claimant alleging a 'novel' theory of vaccine injury may be permitted to incur fees and costs in an unsuccessful quest for supporting medical evidence," and ultimately awarding approximately 75% of the requested attorneys' fees and costs). Petitioner asserts just such a novel theory here – the undersigned is aware of no Vaccine Program decisions either compensating or rejecting claims related to cutaneous T-cell lymphoma. The undersigned has incorporated the novelty of this theory into her reasonable basis analysis, as contemplated in Amankwaa v. Sec'y of Health & Human Servs. See 138 Fed. Cl. 282 (2018).

In Amankwaa, the Court of Federal Claims described "a number of objective factors" unrelated to counsel's conduct that may guide special masters' reasonable basis analysis – specifically, "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." 138 Fed. Cl. at 289. Here, "the novelty of the theory of causation" in particular gives important context to the reasonable basis inquiry. Under these circumstances, the undersigned would not necessarily expect petitioner to offer a wealth of medical literature, or past Vaccine Program cases compensating the same injury. Petitioner provided medical records that establish the claimed vaccine and the claimed injury, along with scientific support – two expert reports bolstered by medical literature. See Pet. Exs. 11, 31. This quantum of objective proof is not sufficient to establish entitlement, but does satisfy the requirements of reasonable basis. See Chuisano, 116 Fed. Cl. at 286 (noting that the reasonable basis burden "is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim"); see also Newport v. Sec'y of Health & Human Servs., No. 17-1897V, 2019 WL 1958682 (Fed. Cl. Spec. Mstr. Mar. 12, 2019) (finding reasonable basis where medical records established the vaccine and the injury, even though no expert report was submitted). Therefore, the undersigned determines that this claim had reasonable basis during the time it was pending before this Court.

4

B.      **Reasonable Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009). A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (2011).

1.      **Reasonable Hourly Rates**

Petitioner requests the following hourly rates for the attorneys and paralegals who worked on this matter:

**Clifford Shoemaker**
    2016: $430.00
    2017: $440.00
    2018: $450.00

**Renee Gentry**
    2016: $415.00
    2017: $424.00

**Sabrina Knickelbein**
    2016: $365.00
    2017: $378.00
    2018: $391.00

**Student Attorneys**
    2018: $145.00

Because Ms. Gentry and her associates practice in Washington, DC, forum rates apply.

The undersigned finds that Ms. Knickelbein's requested hourly rate is not appropriate given the work she performed. Each of Ms. Knickelbein's billing entries states only that she "reviewed" a filing or order – no other tasks are documented. See Pet. Mot. at 9-10. This work does not justify the attorney rate requested here. Indeed, it has been thoroughly established in the Vaccine Program that Ms. Knickelbein may only bill at a paralegal rate when billing for tasks that could have been completed by a paralegal. See, e.g., Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415 (2009) (finding that Ms. Knickelbein should be compensated for paralegal duties at a paralegal rate); Dominguez v. Sec'y of Health & Human Servs., No. 12-378V, 2018 U.S. Claims LEXIS 724, at *5 (Fed. Cl. Spec. Mstr. May 25, 2018) ("Ms. Knickelbein's work in this case is more consistent with the work of a paralegal, or even an administrative assistant, than an experienced attorney."); Drost v. Sec'y of Health & Human Servs., No. 01-502V, 2010 U.S. Claims LEXIS 605, at *18 (Fed. Cl. Spec. Mstr. July 30, 2010) ("[T]he tasks performed by Ms. Knickelbein could have been done by a paralegal."); Turpin v. Sec'y of Health & Human Servs., No. 99-535V, 2008 U.S. Claims LEXIS 419, at *18 (Fed. Cl. Spec. Mstr. Dec. 23, 2008) ("The nature of Ms. Knickelbein's work is far more consistent with the duties commonly and effectively performed by paralegals than the work typically performed by attorneys."). The undersigned will thus award Ms. Knickelbein an hourly rate at the top of the range established for paralegals in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015): $145.00 for 2016; $148.00 for 2017; and $153.00 for 2018. Because Ms. Knickelbein billed 0.4 hours in 2016, 1.4 hours in 2017, and 0.5 hours in 2018, this results in a reduction of $529.00.[4]

As for Ms. Gentry, Mr. Shoemaker, and the student attorneys, the undersigned has awarded similar rates in the past. See, e.g., Parker v. Sec'y of Health & Human Servs., No. 02-1553V, 2018 U.S. Claims LEXIS 833 (Fed. Cl. Spec. Mstr. June 19, 2018). Here, the undersigned again determines that these rates are reasonable and in accordance with the guidelines set forth in McCulloch.

### 2. Reduction of Billable Hours

While the undersigned has determined that petitioner is entitled to an award of attorneys' fees and costs, she finds that a reduction in the number of hours billed by petitioner's counsel is appropriate.

#### a. Intra-Office Communication

In the past, the undersigned and her fellow special masters have frequently noted the inefficiency that results when multiple attorneys work on one case. See Sabella, 86 Fed. Cl. at 214-15 (affirming a special master's reduction of fees for overstaffing where three attorneys

---

[4] The 2016 reduction is calculated as follows: 0.4 x $220.00 = $88.00. The 2017 reduction is calculated as follows: 1.4 x $230.00 = $322.00. The 2018 reduction is calculated as follows: 0.5 x $238.00 = $119.00.

6

from two different firms worked on the same case). Such inefficiency is quite evident here. Three attorneys and two student attorneys billed their time in this case, and the billing records seem to indicate that these attorneys also spent considerable time discussing the case with other associates whose time was not recorded. See generally Pet. Mot. at 3-13. As a result, considerable time was billed for intra-office meetings and other forms of intra-office communication. See, e.g., id. at 4 ("email from Gretchen"; "emails to and from Hee"; "emails from and to Jiawei"); 5 ("prepare for team meeting and meet with team"); 7 ("email from Hee; discuss with Renee [Gentry]").[5] While the student attorneys of the clinic will inevitably require more guidance than full-fledged attorneys, the extra time spent meeting with them, instructing them, and reviewing their work should not be billed to the Vaccine Program. See Carter v. Sec'y of Health & Human Servs., No. 04-1500V, 2007 U.S. Claims LEXIS 249, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007) ("[A]n inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task.").

### b. Vague Billing Entries

It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. June 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. See Rodriguez, 2009 WL 2568468, at *8.

In the past, the undersigned has expressed concern regarding the vagueness of the billing entries submitted by Ms. Gentry and her associates specifically. See, e.g., Rogero v. Sec'y of Health & Human Servs., No. 11-770V, slip. op. at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2018); Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 U.S. Claims LEXIS 1771, at *15-16 (Fed. Cl. Dec. 5, 2017). The same problem arises here. Mr. Shoemaker, for instance, billed for tasks such as the following: "Review corr[espondence]"; "review exhibits and answer questions"; "email from Caroline; check for fax"; "Email from Chelsea." Pet. Mot. at 3-8. It is unclear who Caroline or Chelsea are, and it is unclear how any of these tasks moved the case forward. Ms. Knickelbein's entries are even more egregious. She notes that she has "reviewed" notices of appearance, routine orders, respondent's status reports, entries of judgement, and other

---

[5] Mentions of "Hee," "Heehyun," "Jiawei," and "Huiqi" seem to refer to Heehyun Seo, Jiawei Peng, and Huiqi Zhao, student attorneys at the clinic who did not bill time for this case. See Consent to Appearance by Law Student (EFC No. 10). "Gretchen" likely refers to Gretchen Shoemaker, who serves as an office manager, law clerk, and secretary at Ms. Gentry's firm. See McLeod v. Sec'y of Health & Human Servs., No. 16-1239V, 2017 U.S. Claims LEXIS 2362, at *4 (Fed. Cl. Spec. Mstr. June 5, 2017).

routine filings, but does not document the purpose of that review or any further action.[6]  See Pet. Mot. at 9-10.

### c. Failure to Comply with Billing Requirements

When attorneys seek reimbursement under a fee-shifting statute, the Supreme Court has instructed them to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Nonetheless, "[t]he GWU Vaccine Injury Clinic has been admonished on several occasions by multiple special masters to submit appropriate billing documentation." Clubb v. Sec'y of Health & Human Servs., No. 15-891V, 2019 U.S. Claims LEXIS 162, at *19 (Fed. Cl. Spec. Mstr. Feb. 4, 2019); see also Drost, 2010 U.S. Claims LEXIS 605, at *29 ("[T]he repeated correction of [billing mistakes by Mr. Shoemaker and his associates] distracts judicial resources that could have been devoted to other cases.").  The undersigned reminds petitioner's counsel that failure to heed these repeated instructions will result in further reduction of their fees, as it has here.

For the reasons discussed above, the undersigned will decrease the requested attorneys' fees by 20%.[7]  Petitioner is thus entitled to attorneys' fees of $14,713.28.

### C. Costs

Petitioner requests $13,475.00 to compensate her experts, Dr. Judy Mikovits and Dr. Francis Ruscetti.  Pet. Mot. at 14.  Together, Dr. Mikovits and Dr. Ruscetti billed 38.5 hours at an hourly rate of $350.00.  Id.

The expert reports and testimony offered by Dr. Mikovits and Dr. Ruscetti have received significant criticism in the Vaccine Program.  In many instances, their reports have been "riddled with errors, exaggerations, and false statements." Dominguez, 2018 U.S. Claims LEXIS 724, at *15.  Some special masters have also questioned Dr. Mikovits' credentials specifically, noting that "one of her research papers was severely criticized and subject to retraction from a scientific journal,"[8] Rogero v. Sec'y of Health & Human Servs., No. 11-770V, 2017 U.S. Claims LEXIS 1200, at *129 (Fed. Cl. Spec. Mstr. Sept. 1, 2017), and that she has not held a research position

---

[6] At least one of these entries appears to have been made in error – Ms. Knickelbein billed time for "[r]eview[ing] Judgment on Attorneys Fees" long before the present motion for attorneys' fees had even been filed.  See Pet. Mot. at 10.

[7] The reduction is calculated as follows: $18,391.60 x 0.2 = $3,678.32.

[8] The retraction was spurred by "multiple other studies being unable to confirm the results (including studies performed by some of the original authors), evidence of poor quality control in some of the experiments, and evidence of manipulation or mislabeling of certain figures used in the studies." Dominguez, 2018 U.S. Claims LEXIS 724, at *12.

since 2012.  Dominguez, 2018 U.S. Claims LEXIS 724, at *13; Pet. Ex. 13.  The undersigned herself has called the experts' past reports "generally speculative, difficult to follow, and outside the experts' area of expertise."  Deisher v. Sec'y of Health & Human Servs., No. 17-294V, 2019 U.S. Claims LEXIS 415, at *46 (Fed. Cl. Spec. Mstr. Apr. 1, 2019).

The two expert reports filed by Dr. Mikovits and Dr. Ruscetti in this matter display the same weaknesses.  As the undersigned observed in her Rule 5 Order, the experts' theory regarding aluminum adjuvants was "unpersuasive and not supported by the medical literature"; indeed, she found "the experts' references to medical literature on this point misleading."  Rule 5 Order at 2.  She expressed very similar concerns regarding their cytokine theory and their discussion of compromised skin barriers.  Id.  She further noted that the experts' "references to exposure to carcinogenic compounds [in their second report] appear to be misleading, as they are not relevant to the facts at issue in this case."  Id.

As she has done for these experts in the past, the undersigned will reduce the requested expert fee by 50%,[9] awarding $6,737.50 in total attorneys' costs.  The undersigned advises counsel and other Vaccine Program practitioners, as one of her fellow special masters warned, that "future reliance on [Dr. Mikovits and Dr. Ruscetti] may not be reasonable."  Dominguez, 2018 U.S. Claims LEXIS 724, at *19-20.

**III.   Conclusion**

For the reasons discussed above, the undersigned finds that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorney Fees Requested: | $ 18,920.60 |
| Reduction (Rate Adjustment): | $ (529.00) |
| Reduction (Hours Expended): | $ (3,678.32) |
| **Attorney Fees Awarded** | **$ 14,713.28** |
| | |
| Attorney Costs Requested: | $ 13,475.00 |
| Reduction (Expert Fees): | $ (6,737.50) |
| **Attorney Costs Awarded** | **$ 6,737.50** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$ 21,450.78** |

The undersigned hereby awards the amount of **$21,450.78**, in the form of a check made payable jointly to petitioner and The George Washington University Law School Vaccine Injury Litigation Clinic.

---

[9] The reduction is calculated as follows: $13,475.00 x 0.5 = $6,737.50.

The clerk of the court shall enter judgment in accordance herewith.[10]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.